[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
01/18/2000
THOMAS K. KAHN
CLERK

_____

No. 98-9608

_____

D. C. Docket No. 96-00562-1-CV-GET

SHEILA WOLF,

Plaintiff-Appellant,

versus

COCA-COLA COMPANY, EILEEN HILBURN, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____
**(January 18, 2000)**


Before BLACK, Circuit Judge, GODBOLD and FAY, Senior Circuit Judges.

BLACK, Circuit Judge:

Appellant Sheila Wolf filed suit against Appellee Coca-Cola Company (Coca-Cola) and a number of individual defendants after being terminated from working at Coca-Cola as a computer programmer and analyst. The district court granted the defendants' motions for summary judgment on all of Appellant's claims. On appeal, Appellant challenges only the summary judgment on her claims against Coca-Cola for benefits under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001-1461, benefits under the Consolidated Omnibus Budget Reconciliation Act (COBRA), 29 U.S.C. §§ 1161-1169, retaliation under the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201-219, and retaliation under ERISA. We affirm.

## I. BACKGROUND

Appellant worked as a computer programmer and analyst at Coca-Cola from February 1988 until she was terminated in March 1994. Appellant obtained this work by answering an ad placed by Access, Inc. (Access), a staffing company independent of Coca-Cola. Appellant's only employment contract was with Access; it provided that Appellant was an "independent contractor" of Access. Appellant performed services at Coca-Cola pursuant to contracts between Access and Coca-Cola. These contracts were one year in length and were renewed annually. The contracts governed the rates of compensation and length of

employment for Access workers working at Coca-Cola, including Appellant. Appellant never obtained any written or oral agreement concerning her status at Coca-Cola.

In 1992, Appellant began working on a software project known as the ICS project. Tensions developed, however, with the hardware employees at Coca-Cola, known as the MCS group, over access rights and disk space on the computers. On February 24, 1994, Appellant and her counsel met with a human resources officer and a labor counsel from Coca-Cola (hereinafter "the Feb. 24 meeting"). At the Feb. 24 meeting, Appellant presented allegations that MCS employees were sabotaging the work of the ICS project. In addition, Appellant's counsel stated in his deposition that at the Feb. 24 meeting he "at some point . . . raised the issue that [Appellant] appeared to be an employee and had claims under the Fair Labor Standards Act, under ERISA. I can't remember if I used the words Fair Labor. I may have used Wage Labor Hour or something like that. Then I don't remember." The evidence is undisputed that this meeting is the only time prior to Appellant's termination at which she may have asserted ERISA and FLSA claims to Coca-Cola. On March 7, 1994, Appellant was terminated when Access was told that Appellant's services were no longer needed at Coca-Cola.

3

## II.  DISCUSSION

We review de novo an order granting summary judgment, applying the same legal standards as the district court.  *See Mitchell v. USBI Co.*, 186 F.3d 1352, 1354 (11th Cir. 1999).  We will affirm the summary judgment for the moving party if, viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact.  *See Crawford v. Babbitt*, 186 F.3d 1322, 1325 (11th Cir. 1999).

A.  Claims for Benefits Under ERISA and COBRA.

To assert a claim under ERISA, the plaintiff must be either a "participant" or a "beneficiary" of an ERISA plan.  *See* 29 U.S.C. § 1132(a)(1).  Appellant asserts she is a participant in Coca-Cola's ERISA plan because she is a former employee who may be entitled to benefits from the plan.  A participant is defined as "any *employee* or former *employee* of an employer . . . who is or may become *eligible* to receive a benefit of any type from" the ERISA plan.  *Id*. § 1002(7) (emphasis added).  ERISA thus imposes two requirements for participant status.  First, the plaintiff must be an employee.  Second, the plaintiff must be "according to the language of the plan itself, eligible to receive a benefit under the plan.  An individual who fails on either prong lacks standing to bring a claim for benefits

4

under a plan established pursuant to ERISA." *Clark v. E.I. DuPont DeNemours & Co., Inc.*, No. 95-2845 (4th Cir. Jan. 9, 1997), 105 F.3d 646 (table).

The first prong—whether the plaintiff is an employee—is an independent review by the court of the employment relationship. The Supreme Court held in *Nationwide Mutual Insurance Co. v. Darden*, 503 U.S. 318, 319, 112 S. Ct. 1344, 1346 (1992), that the term "employee" as used in the ERISA statute refers to the common law analysis, which distinguishes between employees and independent contractors by examining at least 14 factors.[1] Under the common law analysis, how the employment relationship is described by the parties and the employment documents is considered but is not dispositive. For example, in *Daughtrey v. Honeywell, Inc.*, 3 F.3d 1488 (11th Cir. 1993), this Court concluded that the district court had relied too heavily on the parties' contract, which described the ERISA

---

[1] The common law analysis is a consideration of at least the following factors:

In determining whether a hired party is an employee under the general common law of agency, we consider the hiring party's right to control the manner and means by which the product is accomplished. Among the other factors relevant to this inquiry are the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

*Darden*, 503 U.S. at 323-24, 112 S.Ct. at 1348 (quoting *Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 751-52, 109 S.Ct. 2166, 2178-79 (1989)).

5

plaintiff as an independent contractor, in determining that the plaintiff was not an employee. *See id.* at 1492-93. Despite the wording of the contract, the plaintiff had introduced sufficient evidence to raise a dispute of material fact over whether she was a common law employee under the full multi-factor *Darden* analysis. *See id.* Thus, if the plaintiff is a "common law employee" of the company, the first prong is established.

The second prong—whether the plaintiff is eligible for benefits—is an examination of the terms of the company's ERISA plan. The plaintiff must be eligible for benefits under the terms of the plan itself. This requirement is necessary because companies are not required by ERISA to make their ERISA plans available to all common law employees.[2] *See Abraham v. Exxon Corp.*, 85 F.3d 1126 (5th Cir. 1996); *Bronk v. Mountain States Tel. & Tel., Inc.*, 140 F.3d

_____

[2] The only limitation imposed by ERISA appears in § 1052, which provides that a plan may not condition eligibility on the employee completing "a period of service with the employer or employers maintaining the plan extending beyond the later of the following dates (i) the date on which the employee attains the age of 21; or (ii) the date on which he completes one year of service." 29 U.S.C. § 1052(a)(1)(A). This section continues: "A plan shall be treated as not meeting the requirements of paragraph (1) unless it provides that any employee who has satisfied the minimum age and service requirements specified in such paragraph, and who is *otherwise entitled* to participate in the plan" is covered within the earlier of six months, or the beginning of the first plan year, after meeting these requirements. *Id*. § 1052(a)(4) (emphasis added). Thus, the only limitations imposed by § 1052 are that an ERISA plan not exclude common law employees on the basis of an age older than 21 or a term of service longer than one year—other grounds for exclusion from ERISA plans are permitted. *See Abraham v. Exxon Corp.*, 85 F.3d 1126, 1130 (5th Cir. 1996); *Bronk v. Mountain States Tel. & Tel., Inc.*, 140 F.3d 1335, 1338 (10th Cir. 1998).

1335 (10th Cir. 1998). For example, the terms of the ERISA plan in *Abraham* excluded "leased employees" from coverage. *See* 85 F.3d at 1128. The Fifth Circuit concluded that although the leased-employee plaintiffs were common law employees, *see id.* at 1129, they were excluded by the plan and therefore had no ERISA claim. *See id.* at 1130-31. Similarly, because the ERISA plan in *Bronk* covered only "regular employees," *see* 140 F.3d at 1336-37, the Tenth Circuit held that the plaintiffs, who were leased employees, could not prevail, despite their status as common law employees, because the plan specifically excluded them. *See id.* at 1338.

Appellant asserts two recent Ninth Circuit cases stand for the proposition that all common law employees are entitled to ERISA benefits. Those cases are distinguishable from this case, however, because of important facts relating to the *second* prong of ERISA standing. In *Vizcaino v. Microsoft Corp.*, 120 F.3d 1006 (9th Cir. 1997) (en banc), the Ninth Circuit held that Microsoft's computer programmer "freelancers" were common law employees, notwithstanding that their contracts specifically described them as independent contractors without eligibility for benefits. *See id.* at 1009-13. Microsoft's ERISA plan, however, expressly made eligible for benefits any "common law employee . . . who is on the United States payroll." *Id.* at 1010. Thus, once the Ninth Circuit held that the first prong

7

was met, under the terms of Microsoft's plan the freelancers were eligible; the court remanded for a determination whether the freelancers were on the United States payroll. *See id.* at 1013. Similarly, in *Burrey v. Pacific Gas & Electric Co.*, 159 F.3d 388 (9th Cir. 1998), the plaintiffs were leased employees. *See id.* at 390. The ERISA plan excluded leased employees *as defined* in I.R.C. § 414(n). *See id.* at 391. That section of the I.R.C. defines a leased employee as a person who is not an employee and who meets certain other criteria. *See id.* at 392. The Ninth Circuit held that the I.R.C., like ERISA, refers to the common law definition of employee when it uses the word "employee." *See id.* at 393. The court therefore reasoned that if a person is a common law employee, he or she is not a leased employee under I.R.C. § 414(n). *See id.* Accordingly, because the employer's plan incorporated the definition of leased employee in I.R.C. § 414(n) for determining who is excluded, the plaintiffs were not excluded as leased employees, under the terms of the plan, if they met the standard for common law employees.[3] *See id.* at 394. Thus, contrary to Appellant's argument, neither *Vizcaino* nor

---

[3] Unlike *Burrey*, Coca-Cola's ERISA plan does not incorporate by reference the definition of "leased employees" from I.R.C. § 414(n). Instead, the plan provides its own definition. Appellant's argument that *Burrey* controls the interpretation of "leased employee" under Coca-Cola's plan therefore is incorrect. *Cf. Abraham*, 85 F.3d at 1130-31 (holding that although exclusion of leased employees from plan may adversely effect tax status under Treasury regulations, court cannot add regulations' requirements to the terms of the plan, so leased employees are excluded by plan).

*Burrey* holds that a person meeting the common law employee test must be given ERISA benefits. Rather, *Vizcaino* and *Burrey* simply clarify that if *the plan* makes all common law employees eligible, then meeting the first prong also will satisfy the second prong. When the plan affirmatively excludes certain workers from coverage, however, then meeting the first prong is not sufficient because, as *Abraham* and *Bronk* hold, failing the second prong denies the plaintiff ERISA standing.

In this case, although Appellant may have a legitimate argument that she was a common law employee of Coca-Cola, her claim for ERISA benefits fails the second prong because she is specifically excluded from eligibility by the terms of Coca-Cola's ERISA plan. The plan includes regular employees and excludes temporary and leased employees. The terms of Coca-Cola's ERISA plan include the following language:

> You're eligible for coverage under the plan if you're a regular employee of The Coca-Cola Company or one of its participating subsidiaries. You're not eligible for coverage under the plan if you're a temporary employee or seasonal employee, as defined by your employer . . .

A "regular employee" is

> An employee . . . who is not classified as a temporary employee and who is normally scheduled to work the number of hours per week and weeks per year that are standard for the division . . .

9

Two parts of the plan do not use the "regular employee" definition (excluding "temporary employees"), but these nevertheless exclude from eligibility "leased employees," defined as "individuals who perform services for the Company under an agreement with a leasing organization."

The district court correctly found that Appellant failed to raise a genuine issue of material fact demonstrating that she could be found to be eligible for benefits under these terms. Significantly, Appellant's status at Coca-Cola always was temporary; her only contract was with Access, and Access's contracts with Coca-Cola were only one year in length and were renewed every year. Furthermore, Appellant always was leased by Coca-Cola from Access. Finally, Appellant has not shown any facts suggesting that she could be considered a regular employee. To the contrary, for example, Appellant wore a different color badge than those worn by regular employees, was paid by Access and requested pay raises through Access, was not invited to events for regular Coca-Cola employees such as the Christmas party, and Appellant herself testified in her deposition that she did not consider herself a regular employee of Coca-Cola and had made inquiries about becoming one. Thus, the district court did not err in granting summary judgment to Coca-Cola on Appellant's claim for ERISA

benefits because Appellant was not eligible for benefits under the terms of Coca-Cola's ERISA plan.

Appellant's claim for benefits under COBRA is derivative of her claim for ERISA benefits because COBRA provides a right to a continuation of ERISA plan coverage after termination. *See Mattive v. Healthsource of Savannah, Inc.*, 893 F. Supp. 1556, 1558 (S.D. Ga. 1995). Therefore, because Appellant was not entitled to benefits under Coca-Cola's ERISA plan, the district court correctly held that the "finding by the court that plaintiff is not entitled to ERISA benefits is determinative regarding plaintiff's entitlement to benefits under COBRA."

B. Claim of Retaliation Under the FLSA.

The FLSA protects persons against retaliation for asserting their rights under the statute. *See* 29 U.S.C. § 215(a)(3). A prima facie case of FLSA retaliation requires a demonstration by the plaintiff of the following: "(1) she engaged in activity protected under [the] act; (2) she subsequently suffered adverse action by the employer; and (3) a causal connection existed between the employee's activity and the adverse action." *Richmond v. Oneok, Inc.*, 120 F.3d 205, 208-09 (10th Cir. 1997). If the employer asserts a legitimate reason for the adverse action, the plaintiff may attempt to show pretext. *See id.* In demonstrating causation, the plaintiff must prove that the adverse action would not have been taken "but for" the

11

assertion of FLSA rights. *See Reich v. Davis*, 50 F.3d 962, 965-66 (11th Cir. 1995).

Although Appellant's FLSA retaliation claim may meet the first element,[4] the district court correctly found that Appellant's claim fails the other two. The second element requires that the adverse action be subsequent to the assertion of FLSA rights. The record demonstrates, however, that there is only one occasion prior to her termination when Appellant might have asserted FLSA rights—the Feb. 24 meeting. We agree with the district court that the evidence regarding the Feb. 24 meeting was insufficient to meet Appellant's burden of producing a dispute of material fact regarding whether she asserted FLSA rights before being fired. The court found that "[a]t that meeting, plaintiff's counsel later testified that he stated that plaintiff 'appeared' to be an employee with a [FLSA] claim. However, plaintiff's counsel does not recall who raised the benefits issue or what any of the individuals said." This testimony, while favorable to the plaintiff,

---

[4] Appellant would be protected by the FLSA if she were an employee of Coca-Cola under the statute. The definition of "employee" under the FLSA is broader than that under ERISA. *See Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326, 112 S.Ct. 1344, 1350 (1992) (FLSA definition much broader than common law employee analysis used under ERISA); *Villarreal v. Woodham*, 113 F.3d 202, 205 (11th Cir. 1997) (describing "economic reality" analysis under FLSA). Thus, if Appellant were a common law employee of Coca-Cola for purposes of ERISA, she also would be an employee under the FLSA.

12

simply is too indefinite to meet Appellant's burden of showing that she actually asserted FLSA rights before being terminated.

Similarly, Appellant's evidence on the third element, causation, also is insufficient to defeat summary judgment for Coca-Cola. Appellant must show she would not have been fired but for her assertion of FLSA rights. Coca-Cola argues it terminated Appellant for a legitimate reason—namely, her allegations that the MCS employees were sabotaging the work of the ICS project. Appellant maintains this proffered reason is a pretext for firing her for asserting FLSA rights. We agree with the district court that Appellant's only evidence of pretext is insufficient. Ben Hilburn, a supervisor at Coca-Cola, related in his deposition a conversation with his wife, Eileen Hilburn, a Coca-Cola superior of the supervisor who directly fired Appellant. The district court noted that "Ben Hilburn testified in his deposition, 'Well, she thought – thought that there were some overtime claims or some such thing, but she didn't really know.'" This testimony, which stands alone, is too ambiguous to create a genuine dispute of material fact regarding whether Coca-Cola's legitimate explanation for Appellant's termination was pretext.

C.  Claim of Retaliation Under ERISA.

ERISA also protects employees against retaliation for asserting claims to benefits under an ERISA plan.  *See* 29 U.S.C. § 1140 (making it unlawful to "discharge" a "participant" in an ERISA plan for asserting a claim for benefits).  In a retaliation case, "a plaintiff may establish a prima facie case of discrimination by showing (1) that he is entitled to ERISA's protection, (2) was qualified for the position, and (3) was discharged under circumstances that give rise to an inference of discrimination."  *Gitlitz v. Compagnie Nationale Air France*, 129 F.3d 554, 559 (11th Cir. 1997) (quoting *Clark v. Coats & Clark, Inc.*, 990 F.2d 1217, 1223 (11th Cir. 1993)).  If the employer asserts a legitimate reason for the discharge, the plaintiff may present evidence that the reason is a pretext masking the specific intent to interfere with ERISA rights.  *See id*.

Appellant's ERISA retaliation claim fails under the first element of the prima facie case.  As determined above, Appellant is not a "participant" in Coca-Cola's ERISA plan because she is not eligible under the terms of the plan.  Appellant therefore was not entitled to claim ERISA benefits and is not protected by ERISA's anti-retaliation provision.  In addition, Appellant's claim fails the third element.  We agree with the district court that the factual deficiencies in Appellant's evidence on the ERISA and FLSA retaliation claims are the same.

That is, the evidence regarding the Feb. 24 meeting is insufficient to prove that Appellant ever asserted ERISA claims prior to being terminated, and the evidence that Coca-Cola's legitimate reasons for termination were pretext also is inadequate to defeat summary judgment.

## III.  CONCLUSION

For the foregoing reasons, we conclude the district court correctly granted summary judgment to Coca-Cola on Appellant's claims for benefits under ERISA and COBRA and for retaliation under the FLSA and ERISA.

AFFIRMED.