Raul **ALVARADO,** Heriberto Aguilar, Luis **Bernabeu,** Alberto Cruz, Luis **Guillermo Munoz,** and Lazaro **Reyes,** Plaintiffs,

v.

**I.G.W.T. DELIVERY SYSTEMS, INC.,** Fernando **Rodriguez,** and Avelina Rodriguez, **Defendants.**

No. 05–21027–CIV–MORENO.

United States District Court, S.D. Florida, Miami Division.

Jan. 17, 2006.

1274

Karen A. Brimmer, Esq., Hinshaw & Culbertson LLP, Miami, FL, for Plaintiff.

Michael A. Pancier, Esq., Rothstein Rosenfeldt Adler, Ft. Lauderdale, FL, for Defendant.

### *ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT*

MORENO, District Judge.

Before the Court is an action brought by the Plaintiffs against their former employers for failure to pay overtime compensation as required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207, and for retaliatory discharge as prohibited by the FLSA under 29 U.S.C. § 215(a)(3). Here the Defendants move the Court for summary judgment (D.E. No. 25) on both of the Plaintiffs' claims. For the reasons set forth below, this motion is GRANTED.

### I. Background

Plaintiffs are all former drivers for the Defendant, I.G.W.T. I.G.W.T. is an independent subcontractor for DHL and does not have an office, but operates out of the

DHL terminal with other DHL subcontractors. I.G.W.T.'s operations are limited to South Miami Dade County, Florida. As part of its contract with DHL, I.G.W.T. picks up packages and letters from their designated routes and delivers them to the DHL terminal for travel to their ultimate interstate or international destinations. I.G.W.T. also delivers DHL packages and letters which arrive from other states and international locales to their ultimate recipients in South Miami Dade County.

The individual Defendants are the owners and officers of I.G.W.T. Mr. Rodriguez ran the day to day operations in the warehouse, while Mrs. Rodriguez ran the administrative aspects of the company. The Plaintiffs' main responsibility entailed the delivery and collection of freight in South Miami Dade County on behalf of DHL. Specifically, their job required them to report to the DHL terminal in the morning and await the arrival of freight on board a DHL truck from the airport. The freight arrives daily via air and originates from other states and countries. Once the freight is unloaded by DHL employees, the Plaintiffs sort them by route, enter the package information into their hand scanners, and load them onto their delivery vans. Once the vans are loaded, Plaintiffs deliver the packages by motor carrier to their intended recipients based on priority of service. Similarly, the Plaintiffs pick up letters and packages from business and individuals on their designated routes. At the end of the day, once all packages have been delivered and picked up, the Plaintiffs return to the DHL terminal and park their vans at the loading dock. Then, DHL employees unload the packages for delivery to the DHL plane for national and international delivery to their ultimate destinations.

## II. Legal Standard

Summary judgment is authorized where there is no genuine issue of material fact.

Fed.R.Civ.P. 56(c). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The party opposing the motion for summary judgment may not simply rest upon mere allegations or denials of the pleadings, the non-moving party must establish the essential elements of its case on which it will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The nonmovant must present more than a scintilla of evidence in support of the nonmovant's position. A jury must be able reasonably to find for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## III. Analysis

### A. Motor Carrier Exemption

Plaintiffs claim they worked in excess of forty hours per week during their employment and are therefore entitled to overtime compensation from their former employers under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207. Pursuant to the Fair Labor Standards Act, an employer must compensate employees not less than one and one-half times their regular rate for hours worked in excess of fort hours per week. 29 U.S.C. § 207(a)(1). In the event that an employer fails to pay overtime, where required by law, an employee may sue an employer for unpaid overtime wages. 29 U.S.C. § 216(b).

Defendants claim that Plaintiffs are exempt from the payment of overtime wages, however, pursuant to 29 U.S.C. § 213(b)(1), otherwise known as the motor carrier exemption. Under the motor carrier exemption, "[t]he provisions of section

207 of this title shall not apply with respect to any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of title 49." Title 49 U.S.C. § 31502(b)(1)(2) provides that "[t]he Secretary of Transportation may prescribe requirements for (1) qualifications and maximum hours of service of employees of, and safety of operation and equipment of, a motor carrier; and (2) qualifications and maximum hours of service of employees of, and standards of equipment of, a motor private carrier, when needed to promote safety of operation."

As explained by the Eleventh Circuit, "[t]he Secretary has power to establish qualifications and maximum hours of service for employees who (1) are employed by carriers whose transportation of passengers or property by motor vehicle is subject to the Secretary's jurisdiction under the Motor Carrier Act; and (2) engage in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the Motor Carrier Act." *Baez v. Wells Fargo Armored Service Corp.,* 938 F.2d 180, 181–82 (11th Cir.1991) (citing 29 C.F.R. § 782.2(a)); *see also Opelika Royal Crown Bottling Co. v. Goldberg,* 299 F.2d 37, 43 (5th Cir.1962) (holding that driver-helpers who load and unload cargo affect the safety of the vehicle and are therefore exempt from the overtime provisions of the FLSA by section 13(b)(1)). Therefore, in order to determine whether summary judgment should be granted for the employer in this case under the motor carrier exemption, the Court must determine whether (1) the employer is a motor carrier and (2) if the Plaintiffs were engaged in activity directly affecting the safety of op-

eration of motor vehicles in interstate commerce.

### 1. Defendant I.G.W.T. Qualifies as a "Motor Carrier"

A motor carrier is defined as "a person providing motor vehicle transportation for compensation." 49 U.S.C. § 13102(12). The term "transportation" includes a "motor vehicle, vessel, warehouse, wharf, pier, dock, yard, property, facility, instrumentality, or equipment of any kind related to the movement of passengers or property, or both, regardless of ownership or an agreement concerning use; and . . . services related to that movement, including arranging for, receipt, delivery, elevation, transfer in transit, refrigeration, icing, ventilation, storage, handling, packing, unpacking, and interchange of passengers and property." *Id.* at § 13102(21)(A)-(B).

In this case it is clear that the Defendant, I.G.W.T., as a contractor for DHL, provides motor vehicle transportation of letters, packages, and parcels to and from the DHL terminal for compensation. Plaintiffs do not challenge this point. Therefore this first element required by the motor carrier exemption is met by the employer-Defendant, I.G.W.T.

### 2. Plaintiffs Were Engaged in Activity Directly Affecting the Safety of Operation of Motor Vehicles in Interstate Commerce

Plaintiffs allege in their Response that the evidence in this case "does not support Defendants' contention that the Plaintiffs' deliveries and pick ups involved only items originating from or destined for delivery outside the state of Florida." However, a majority of the depositions submitted do illustrate that the Plaintiffs were engaged in interstate commerce. According to testimony provided by several Plaintiffs, I.G.W.T. clearly picks up packages and letters intended for delivery

throughout the United States, as well as internationally. *See* Appendix of Exhibits in Support of Defendants' Motion for Final Summary Judgment, A–4, pp. 19–20; A–5 pp. 19–20; A–6 p. 37; A–7 pp. 37–39; A–8, pp. 83–84. As employees of I.G.W.T., Plaintiffs played a key intermediary role in the fulfillment of preexisting orders by delivering letters and packages to and from the DHL terminal for travel to their ultimate interstate or international destinations. It is irrelevant that the Plaintiffs themselves only traveled within the South Florida area picking up and delivering packages, as this is enough to satisfy the interstate commerce requirement. *See Baez*, 938 F.2d at 182 (finding the transport of checks, coins, mail, and currency by the Plaintiffs within the Miami, Florida area still met the definition of interstate commerce and the motor carrier exemption given that the financial instruments were ultimately bound for banks outside the state of Florida); *Opelika Royal Crown Bottling Co.*, 299 F.2d at 43 (holding that although the employees themselves traveled only intrastate, the cargo being transported was destined for a neighboring state and therefore the drivers were exempt from overtime compensation under § 213(b)(1)); *see also* 29 C.F.R. § 782.7(b)(1) (stating that a driver is engaged in interstate commerce under the Motor Carrier Act and the FLSA even though "the vehicles do not actually cross State lines but operate solely within a single State...Transportation within a single State is in interstate commerce within the meaning of the Fair Labor Standards Act where it forms as part of a 'practical continuity of movement' across State lines from the point of origin to the point of destination.")

■ Plaintiffs allege that Defendants' motion for summary judgment should also be denied because it fails to provide airway bills or other documentation to demonstrate that the origin and destination of parcels picked up or delivered by the Plaintiffs was intrastate and international in nature. However, such additional evidence is unnecessary given the Plaintiffs' deposition testimony, which sufficiently demonstrates that there is no genuine issue of material fact with regards to I.G.W.T.'s involvement in interstate commerce. Plaintiffs also claim that the interstate component of the deliveries made by the Defendant is *de minimis* in nature, but have failed to allege any specific facts to support such a claim. *See Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. 2548 (stating that "Rule 56(c)...requires a non-moving party to go beyond the pleadings and by [its] own affidavits or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'"). Thus the Plaintiffs' argument does not defeat the Defendants' properly supported motion for summary judgment. *See Anderson*, 477 U.S. at 247–48, 106 S.Ct. 2505 (holding that the mere existence of "some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.")

Finally there is little question that as I.G.W.T. delivery truck drivers, Plaintiffs' activities directly affected the safety of operation of motor vehicles in interstate commerce. Under Title 29, C.F.R. § 782.3(a), a driver is defined as "an individual who drives a motor vehicle transportation which is, within the meaning of the Motor Carrier Act, in interstate or foreign commerce." Furthermore, "[t]he work of an employee who is a full-duty or partial duty 'driver,' as the term 'driver' is above defined, directly affects 'safety of operation' within the meaning of section 204 of the Motor Carrier Act whenever he drives a motor vehicle in interstate or foreign commerce within the meaning of that

act." 29 C.F.R. § 782.3(b) (citing *Levinson v. Spector Motor Service*, 330 U.S. 649, 67 S.Ct. 931, 91 L.Ed. 1158 (1947)). In this case Plaintiffs served as a key component in the interstate delivery process of I.G.W.T. packages to locales around the United States and the world. These drivers consistently loaded and unloaded letters and packages from delivery trucks, and therefore the second prong of the motor carrier exception is met in this case. *See Levinson*, 330 U.S. at 669, 67 S.Ct. 931 (citing Ex parte No. MC—2, 28 M.C.C. 125, 138–39) (explaining that the employees of private or contract carriers of property by motor vehicle subject to the Interstate Commerce Act include drivers, mechanics, loaders, and helpers, all of which perform duties which directly affect safety of operation).

## B. FLSA Retaliatory Discharge Claim

With regards to the Plaintiffs' claim under Title 29 U.S.C. § 215(a)(3), there appears to be some confusion as to which series of events is the true cause of the alleged retaliatory discharge. Plaintiffs argue that their case implicates rights under the FLSA because at least three of the Plaintiffs were required to sign a letter presented to them in 2003 by the Defendant, Avelina Rodriguez, agreeing to work on a fixed salary and not receive overtime compensation. Two Plaintiffs also testified that they felt they were coerced into signing the letter or they would lose their jobs. Defendant Avelina Rodriguez does not recall any of the Plaintiffs complaining about signing the subject letter. Plaintiffs allege that this gives rise to a genuine issue of material fact as to whether Plaintiffs voiced complaints concerning the non-payment of overtime.

At the same time Plaintiffs have also alleged through deposition testimony that they were wrongfully discharged for signing and submitting two letters to the Defendant in 2005 requesting, among other things, an increase in salary, reorganization of delivery routes, the cessation of discriminatory comments on the job, and increased courtesy and respect in company memorandums. Plaintiffs allege that signing these letters led to termination of their employment with the Defendant. *See* Appendix of Exhibits in Support of Defendants' Motion for Final Summary Judgment, A–2, p. 73; A–4, pp. 66–67; A–5, pp. 29–30; A–6, p. 50; A–7, p. 49.

Ultimately Plaintiffs fail to make a case for retaliatory discharge under the FLSA, regardless of whether they hinge their claim upon the letters they signed in 2003 or the letters they signed and submitted in 2005. In both cases, Plaintiffs cannot meet the elements required to establish a prima facie case under 29 U.S.C. § 215(a)(3). Under the statute, it is unlawful for any person "to discharge or in any other matter discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this Act [29 U.S.C. 201 et seq.], or has testified or is about to testify in any such proceeding or has served or is about to serve on an industry committee." 29 U.S.C. § 215(a)(3). In order to establish a prima facie case of retaliation under 29 U.S.C. § 215(a)(3), Plaintiffs must demonstrate that (1) they engaged in activity protected under the act; (2) they suffered adverse action by the employer, and (3) a causal connection existed between the employee's activity and the adverse action. *Wolf v. Coca–Cola Company*, 200 F.3d 1337, 1342–43 (11th Cir.2000) (citing *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 208–09 (10th Cir.1997)). If the Defendant is able to present a valid reason for terminating the Plaintiffs' employment, then the Plaintiff may attempt to show that the proffered reason is pretextual in nature. *See id.* Furthermore, in demonstrating

causation, the plaintiff must prove that the adverse action would not have been taken "but for" the assertion of FLSA rights. *See Reich v. Davis*, 50 F.3d 962, 965–66 (11th Cir.1995).

In the case of the 2003 letters, which appear to be the Plaintiffs' main argument, a causal connection does not exist between the employee's activity and the adverse action. *See Wolf*, 200 F.3d at 1343. The Plaintiffs were discharged in February 2005, whereas the letters were signed in 2003. Moreover, Plaintiffs have failed to produce a dispute of material fact as to whether they asserted FLSA rights before being fired. *Id.* (finding that a prima facie case requires that the "adverse action be subsequent to the assertion of FLSA rights."). Simply signing the letters in 2003 does not qualify as an assertion of FLSA rights, and adverse action was taken by the Defendant years later. If anything, Plaintiffs themselves appear to believe that the 2003 letters were not the reason for their discharge, as deposition testimony from several Plaintiffs demonstrates that they believe they were fired for signing on to the February 2005 letters demanding improved working conditions. *See* Appendix of Exhibits in Support of Defendants' Motion for Final Summary Judgment, A–2 p. 783, A–4, pp. 66–67, A–6 p. 50.

The letters signed by the Plaintiffs in February 2005 also fail to meet the elements required for a prima facie case under 29 U.S.C. § 215(a)(3). The letters themselves do not appear to clearly assert rights under the statute in that they make no specific mention of overtime pay or invoke the FLSA. Even if the letters are interpreted to assert rights under the statute and subsequently qualify as protected conduct, Defendants offer a legitimate, nondiscriminatory reason for discharge in opposition to the Plaintiff's prima facie case. Defendants and one Plaintiff are in

agreement that the Plaintiffs were fired because they refused to go out in their vans and deliver the packages unless they received concessions from the Defendants as outlined in one of their two letters. It is also undisputed that five other signatories who did go out in their vans and deliver their packages for the day were not terminated. Moreover, Defendant Heriberto Aguilar testified that the Plaintiffs' position was that unless everyone received a raise that day, they would walk off the job. Appendix of Exhibits in Support of Defendants' Motion for Final Summary Judgment, A–7, p. 28. Defendant Raul Alvarado similarly testified that on the date of their termination, either his immediate supervisor Mr. Parla or Mr. Rodriguez told them that the first of the two letters was blackmail and that they were terminated. *Id.* at A–2, p. 74; A–3 pp. 4–5; A–4 p. 82. Defendant Alvarado also testified that the signatories who were not terminated did not leave voluntarily as did the named Plaintiffs, and speculated that they were fired but then paid to stay. Finally, Defendant Munoz also testified that those signatories of the letter who were not fired had gone out in their vans and done their job on the morning in question. Therefore, even though a causal connection does appear to exist in that the Plaintiffs were fired several days after the second of the two demand letters was submitted, Defendants have provided a valid reason for their termination and the Plaintiffs have not met the burden of persuasion that this proffered reason is pretextual in nature.

## IV. Conclusion

Defendants clearly meet the Motor Carrier Exemption in this case. Plaintiffs were engaged in interstate commerce, and as drivers of I.G.W.T.'s delivery vans, they definitely affected the safety of the motor vehicles in question. With regards to the

Plaintiffs' retaliatory discharge claim, Plaintiffs fail to meet the elements necessary to establish a prima face case under the FLSA, regardless of whether they hinge their claim upon the letters they signed in 2003 or the letters they signed and submitted in 2005. Accordingly, it is

**ADJUDGED** that the Defendants' Motion for Summary Judgment (**D.E. No. 25**), filed *October 6, 2005*, is **GRANTED**.