OPINION
PER CURIAM.
Robert Friz (Friz) appeals the district court's entry of judgment in favor of J & H Marsh & McLennan, Inc. (Marsh), an insurance brokerage company, the J & H Marsh & McLennan, Inc. Acquisition Severance Pay Plan (the Marsh Severance Pay Plan or the Plan), and Edward Pazicky (Pazicky), the administrator for the Plan. In the district court, Friz sought review of Pazicky’s determination that he was ineligible for enhanced severance benefits under the Plan, an employee welfare benefit plan governed by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 et seq. For the reasons stated below, we affirm.
I
In November 1998, Marsh & McLennan Companies, Inc. (MMC), the parent of Marsh, acquired Sedgwick, Inc. (Sedgwick). As a result of the acquisition, Sedgwick was merged into various subsidiaries of MMC.
On January 4, 1999, Marsh sent by email a memorandum (the Broadcast Memo) to all Marsh employees in the United States informing them that the acquisition of Sedgwick would result in certain staff reductions. Although the Broadcast Memo was sent to all Marsh employees in the United States, Friz, a vice-president in Marsh’s Baltimore, Maryland office at the time, contends he did not receive it; in any event, Friz did have access to the memo from his computer on Marsh’s Lotus Notes database.
The Broadcast Memo explained that those employees laid off in connection with the reduction-in-force would be eligible for severance benefits under a “Merger Severance Pay Plan.” The Broadcast Memo explained that, under the proposed Merger Severance Pay Plan, separating employees would be eligible for one of two types of severance benefits: basic or enhanced. According to the Broadcast Memo, basic *279 severance benefits consisted of two weeks base salary paid in a lump sum to all employees terminated under the Merger Severance Pay Plan. Enhanced severance benefits provided greater benefits, but the Broadcast Memo indicated that the receipt of those benefits was expressly contingent upon signing “a waiver and release agreement in the form provided by the company that includes a specific clause on non-solicitation of both accounts and employees of the company.”
The Marsh Severance Pay Plan went into effect on March 31, 1999 and terminated on December 31, 1999.[1] The Plan provided that its purpose was “to provide severance pay and benefits to eligible [Marsh] employees” terminated as a result of the acquisition of Sedgwick. The Plan provided that eligible employees would be entitled to one of two types of severance benefits, either basic or enhanced.
Under the Plan, basic severance benefits consisted of two weeks base salary, paid in a lump sum two weeks following termination. An employee was eligible for enhanced severance benefits if the employee signed “a Waiver and Release Agreement in a form prepared by the Company (‘Waiver and Release”), and such Waiver and Release becomes effective by its terms.”[2] Thus, unlike the language contained in the Broadcast Memo, the Plan did not contain a specific clause pertaining to the solicitation of both accounts and employees of Marsh. Enhanced severance benefits were calculated by using a seniority formula, with a minimum benefit consisting of four weeks base salary, plus a $1,500 to $3,500 allowance for health benefits continuation, out-placement assistance, and other benefits.
On January 31, 1999, Friz was selected for termination in conjunction with MMC’s acquisition of Sedgwick. On April 15, 1999, Friz received written notification of his termination. At that time, he was offered a “Change of Employment Status/Waiver and Release Agreement” (the Agreement). The Agreement provided that in exchange for $89,440 and other benefits, Friz would release any real or potential claims against Marsh and forego his right to solicit certain customers and employees of Marsh for one year.
By the terms of the Agreement, Friz had a forty-five day period, or until May 31, 1999, to consider its terms and accept it. Friz did not sign the Agreement during the forty-five day period or any time thereafter, nor did he raise any questions or issues concerning the scope of the Agreement during this period. Thus, under the Plan, he qualified only for basic severance benefits, which he received in due course. The record reflects that Friz chose not to accept the Agreement because he intended to, and apparently did in fact, solicit Marsh’s clients.
On October 28, 1999, Friz initiated an administrative appeal under the Marsh Severance Pay Plan regarding his failure *280 to qualify for enhanced severance benefits. According to Friz, he was entitled to enhanced severance benefits because the Plan did not condition the receipt of enhanced severance benefits on the non-solicitation of both accounts and employees of Marsh. After review, Pazicky denied Friz’s claim for the following reasons: “(1) the Plan’s language expressly provided that the terms of the Waiver and Release would be prepared” by Marsh and “Friz failed to sign the Waiver and Release” as prepared by Marsh; “(2) Friz failed to sign the Agreement within the forty-five day period as required under the Plan; (3) the non-solicit clause was reasonable in that it was narrowly drawn; (4) the Agreement offered generous compensation; and (5) as early as January 4, 1999, Friz, along with all other potential participants, had been advised that the Waiver and Release would include a ‘specific clause on non-solicitation of both accounts and employees’ ” of Marsh.
On March 14, 2000, in the Circuit Court for Baltimore City, Maryland, Friz filed a complaint against Marsh, the Marsh Severance Pay Plan, and Pazicky to recover under ERISA the enhanced severance benefits denied to him by Pazicky. After the case was removed to the United States District Court for the District of Maryland in April 2000, Marsh, the Plan, and Pazicky filed a motion to dismiss, or in the alternative, for summary judgment. After full briefing on the motion and oral argument, the district court issued an order on June 27, 2000 granting the defendants’ motion and dismissing Friz’s complaint with prejudice. The district court held that Pazicky’s interpretation of the Plan to deny Friz’s claim for enhanced severance benefits was reasonable. Friz noted a timely appeal.
II
Decisions by plan administrators are generally reviewed de novo. See Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 112, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). However, if the plan gives the plan administrator discretionary authority to determine eligibility or to construe the terms of the plan, our review of the plan administrator’s decision is for an abuse of discretion. See Ellis v. Metro. Life Ins. Co., 126 F.3d 228, 232 (4th Cir.1997). Under this deferential standard, we will not disturb the decision of the plan administrator if it is reasonable, even if we would have reached a different conclusion independently. See id. Whether a plan gives the plan administrator discretionary authority is a question we review de novo. See id. at 233.
In this case, there is really no question that Pazicky possessed discretionary authority to determine Friz’s entitlement to enhanced severance benefits under the Plan. The parties essentially do not dispute this, and the Plan’s language is crystal clear on this point.[3] Therefore, we must determine if Pazicky exercised his discretion reasonably. See id. at 232.
In assessing the reasonableness of a plan administrator’s decision, we may consider, but are not limited to, such factors as:
*281 (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary’s interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decisionmaking process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary’s motives and any conflict of interest it may have.
Booth v. Wal-Mart Stores, Inc., 201 F.3d 335, 342-43 (4th Cir.2000).
Applying these factors, we conclude that Pazicky’s decision denying Friz enhanced severance benefits was reasonable. First, his decision was consistent with the language of the Plan. The Plan provided that eligibility for enhanced severance benefits was contingent upon an employee executing a “Waiver and Release Agreement in a form prepared” by Marsh. Marsh prepared a “Waiver and Release Agreement” and presented it to Friz for execution. In the Agreement, Friz was asked to, in exchange for $89,440 and other benefits, release Marsh from liability, waive any real or potential claims against Marsh, and waive his right to solicit certain customers and employees of Marsh for one year. As a consequence of his failure to execute the Agreement, Friz was only entitled to basic severance benefits, which he received.[4]
Second, Pazicky’s decision was consistent with the purposes and goals of the Plan. The purpose of the Plan was “to provide severance pay and benefits to eligible [Marsh] employees” terminated as a result of the acquisition of Sedgwick, and the Plan provided that eligible employees would be entitled to one of two types of benefits, either basic or enhanced. In accordance with the terms of the Plan, Friz received the benefits to which he was entitled, thus fulfilling the purposes and goals of the Plan.
Third, the materials considered by Pazicky in reaching his decision, primarily the Plan and the Agreement, were adequate and fully support the reasonableness of his decision.[5]
Fourth, Friz does not argue and the record does not reflect that the provisions of the Plan have been inconsistently applied to the Marsh employees terminated in 1999 as a result of the Marsh Sedgwick merger. Indeed, it appears that no employee who elected not to execute the Agreement received enhanced severance.
Fifth, Pazicky’s decisionmaking process was reasoned and principled. In his decision, Pazicky reviewed the Plan’s language in a reasonable manner and applied that interpretation to Friz. In addition, there is no dispute that, administratively, Friz had an opportunity to litigate his claim.
*282 Sixth, Pazicky’s decision was consistent with the procedural and substantive requirements of ERISA. As noted above, Pazicky’s decision was consistent with the language of the Plan. Further, Friz was fully aware of his rights and obligations under the Plan. To receive basic severance benefits, he had to do nothing; to receive enhanced severance benefits, he had to execute the “Waiver and Release Agreement” prepared by Marsh. He chose the former.
With regard to factor seven, any external standard relevant to the exercise of discretion, and factor eight, the fiduciary’s motives and any conflict of interest it may have, Friz contends that Pazicky, as an employee of Marsh, acted under a conflict of interest. A plan administrator’s “conflict of interest, in addition to serving as a factor in the reasonableness inquiry, may operate to reduce the deference given to a discretionary decision” of that plan administrator. Booth, 201 F.3d at 343 n. 2. A conflict of interest reduces the deference to the degree necessary to “neutralize any untoward influence resulting from that conflict.” Doe v. Group Hospitalization & Medical Servs., 3 F.3d 80, 87 (4th Cir. 1993). In other words, “[t]he more incentive for the administrator or fiduciary to benefit itself by a certain interpretation of benefit eligibility or other plan terms, the more objectively reasonable the administrator or fiduciary’s decision must be and the more substantial the evidence must be to support it.” Ellis, 126 F.3d at 233.
In this case, even if Friz could demonstrate a conflict of interest, our review would be confined to determining whether Pazicky’s decision was objectively reasonable. See Elliott v. Sara Lee Corp., 190 F.3d 601, 605 (4th Cir.1999). Applying this standard, for essentially the same reasons set forth above, we conclude that Pazicky’s decision was objectively reasonable as a matter of law.
Ill
In summary, our consideration of the Booth factors leads to the inescapable conclusion that Pazicky’s decision denying Friz enhanced severance benefits was reasonable. Accordingly, we affirm the judgment of the district court.

AFFIRMED.

. The parties seem to agree that the Plan, as contained in the record, contains two documents, one entitled "J & H Marsh & McLennan, Inc. Acquisition Severance Pay Plan Summary Plan Description,” and the other entitled, "J & H Marsh & McLennan, Inc. Amended Merger Severance Pay Plan.” Unless we specify otherwise, when we refer to the Plan, we are referring to the J & H Marsh & McLennan, Inc. Acquisition Severance Pay Plan Summary Plan Description.

. The J & H Marsh & McLennan, Inc. Amended Merger Severance Pay Plan employs similar but not identical language. It provides that an employee will be eligible for enhanced severance benefits if the employee signs "a Waiver and Release Agreement prepared by the Company.”

. On this point, the Plan provides:
The Plan Administrator shall have the responsibility and the discretionary authority to interpret the terms of this Plan, to determine eligibility for benefits, and to determine the amount of such benefits. The Plan Administrator may award additional benefits under this Plan at his sole discretion. The interpretation and determinations of the Plan Administrator shall be final and binding unless determined by a court of competent jurisdiction to be arbitrary and capricious.

. We note that Pazicky was under the mistaken belief that the Plan required Friz to execute the Agreement by May 31, 1999 to secure enhanced severance benefits. Rather, the Agreement, and not the Plan, contained the forty-five day provision.

. Secondarily, Pazicky considered the Broadcast Memo, expressing the view that, through it, Friz was on notice that the Agreement would contain a specific provision containing a waiver of the right to solicit clients and employees of Marsh. Friz contends that Pazicky erred when he considered the Broadcast Memo in rendering his decision. We need not address this argument because, in rendering his decision, Pazicky primarily considered the Plan and the Agreement, not the Broadcast Memo. Thus, Pazicky's consideration of the Broadcast Memo does not undermine the reasonableness of his decision.