**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 5 2003**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

DAVID B. CIRULIS,

    Plaintiff - Appellant,

v.

UNUM CORPORATION
SEVERANCE PLAN, UNUM
CORPORATION OFFICER
SEVERANCE PLAN, and ROBERT
CORNETT,

    Defendants - Appellees.

No. 01-3362

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**(D.C. No. 00-2178-CM)**

---

Patrick K. McMonigle (John F. Wilcox, Jr., with him on the briefs), of Dysart Taylor Lay Cotter & McMonigle, P.C., Kansas City, Missouri, for Plaintiff-Appellant.

Morris J. Nunn of Stinson Morrison Hecker, L.L.P., Kansas City, Missouri, for Defendants-Appellees.

---

Before **HENRY** , **McWILLIAMS** , and **LUCERO** , Circuit Judges.

---

**LUCERO** , Circuit Judge.

This case requires resolution of the following question: Does the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq., authorize a plan administrator to condition payment of severance benefits on an employee's assent to a non-solicitation provision not included on the face of a plan? David B. Cirulis, formerly employed with UNUM Life Insurance Company ("UNUM"), brought suit to recover severance payments denied to him after he refused to sign a General Agreement and Release ("Release") including a non-solicitation clause. This clause prohibited Cirulis from soliciting UNUM employees or brokers to terminate their relationships with UNUM or become employed by another insurance company. [1] The district court granted summary judgment to UNUM, dismissed Cirulis's claims, and denied his subsequent motion for rehearing. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we reverse.

---

[1] The clause stated:

> You further agree that for a period of two years after your employment termination from UNUM, you will not directly or indirectly solicit, assist, or induce any of UNUM's sales representatives, other employees, or brokers to terminate their relationships with UNUM or to become employed by or associated with another insurance company. You acknowledge and agree that UNUM has a valid need to protect its business by prohibiting such solicitation and that these restrictions are both reasonable and necessary to protect UNUM's business.

(1 Appellant's App. at 109.)

## I

In November 1998, after Cirulis had been employed with UNUM for approximately thirteen years, UNUM announced a merger. Several years prior to this, UNUM had established severance plans covering Cirulis. Under the terms of these plans, the plan administrator, Robert Cornett, retained discretion to determine benefit rights, eligibility, timing and amount of payments, and to construe and interpret the terms of the plan. In order to receive benefits, employees were required to sign a "General Agreement and Release." Neither party disputes that the severance plans at issue in this case are governed by ERISA.

In April 1999, Cirulis learned that his position would be eliminated as a result of the merger and on July 1, 1999, the effective date of the merger, he was formally terminated. On June 24, 1999, Cirulis received a copy of the Release for the first time, which included the non-solicitation clause as well as a waiver of legal claims. On August 4, 1999, UNUM informed Cirulis that he would be eligible only for employee-level severance benefits but not for enhanced officer-level benefits. Cirulis obtained counsel, and repeatedly objected to and requested negotiations regarding the non-solicitation clause. Eventually, he appealed to the plan administrator both as to UNUM's refusal to amend the non-solicitation

clause and as to the calculation of his benefits. Nonetheless, on February 22, 2000, UNUM accused Cirulis of violating the non-solicitation provision and, on April 20, informed him that he was no longer eligible for either level of severance benefits in light of his refusal to sign the Release and alleged violation of its terms.

In response, Cirulis filed suit in federal district court under 29 U.S.C. § 1132, arguing that he was entitled to officer-level benefits notwithstanding his rejection of the non-solicitation provision and that UNUM's repeated failure to provide him with documents relating to the severance plan subjected UNUM to statutory penalties. On summary judgment, the district court dismissed the claims, ruling that (1) Cirulis's failure to sign the Release justified UNUM's denial of benefits, (2) conditioning benefits on the non-solicitation provision was a reasonable exercise of the plan administrator's discretion, and (3) Cirulis failed to establish the bad faith required to recover statutory penalties. Cirulis v. UNUM Corp. Severance Plan, No. 00-2178-CM (D. Kan. Sept. 5, 2001). The district court declined to address the question of whether Cirulis was entitled to officer-level benefits rather than employee-level benefits, concluding that his refusal to sign the Release disqualified him under either plan. Id.

On appeal, Cirulis challenges the district court's underlying summary judgment order, arguing that the plan administrator acted arbitrarily and

capriciously in conditioning the payment of benefits on the non-solicitation provision and in permitting amendments to the Release for three other employees while refusing to allow any amendments as to his Release.[2]

## II

We review the grant of summary judgment de novo, applying the same legal standard used by the district court. Save Palisade Fruitlands v. Todd, 279 F.3d 1204, 1209 (10th Cir. 2002). When a beneficiary challenges a denial of ERISA benefits under § 1132(a)(1)(B) and the plan confers discretion on the plan administrator to determine eligibility and to construe the plan's terms, as here,[3] the reviewing court applies an arbitrary and capricious standard. Kimber v. Thiokol Corp., 196 F.3d 1092, 1097 (10th Cir. 1999). "When reviewing under the arbitrary and capricious standard, . . . [t]he [administrator's] decision will be upheld unless it is not grounded on *any* reasonable basis. The reviewing court need only assure that the administrator's decision fall[s] somewhere on a

---

[2] Cirulis also contends that the district court erred in denying his motion for rehearing under Rule 59(e) because the summary judgment order effectively denied his statutory right to judicial review. Because, as discussed below, we decide that the district court erred in granting summary judgment, we need not address this issue.

[3] UNUM's plan provides: "The Plan Administrator shall have the full discretion to make determinations as to the right of any person to a benefit in this Plan. The Plan Administrator shall have the power to construe and interpret the terms of this Plan, decide all questions of eligibility, and determine the amount and time of payment of any benefits due under this Plan." (1 Appellant's App. at 79.)

continuum of reasonableness—even if on the low end." Id. at 1098 (quotations omitted).

Noting that the non-solicitation clause did not appear on the face of the severance plan, Cirulis maintains that the plan administrator exceeded the bounds of his discretion in conditioning payment of benefits on assent to this provision. ERISA mandates that: "[e]very employee benefit plan shall be established and maintained pursuant to a written instrument," 29 U.S.C. § 1102(a)(1), and that plan administrators provide benefits "in accordance with the documents and instruments governing the plan," § 1104(a)(1)(D). "[A] written plan is to be required in order that every employee may, *on examining the plan documents,* determine exactly what his rights and obligations are under the plan." Curtiss-Wright Corp. v. Schoonejongen, 514 U.S. 73, 83 (1995) (explaining the rationale for ERISA writing requirements) (quotation omitted). Consequently, courts have held that the imposition of new conditions that do not appear on the face of a plan constitutes arbitrary and capricious conduct. Garratt v. Walker, 164 F.3d 1249, 1255 (10th Cir. 1998); Blau v. Del Monte Corp., 748 F.2d 1348, 1356 (9th Cir. 1985).

UNUM correctly points out that the severance benefits at issue in this case constitute a welfare-benefit plan rather than a pension plan under ERISA. Massachusetts v. Morash, 490 U.S. 107, 116 (1989). Although welfare-benefit

-6-

plans are not subject to all ERISA requirements that govern pension plans, <u>Chiles v. Ceridian Corp.</u>, 95 F.3d 1505, 1510 (10th Cir. 1996), we note that both welfare-benefit and pension plans are subject to the ERISA reporting-and-disclosure requirements discussed in <u>Curtiss-Wright</u>, 514 U.S. at 83, as well as to ERISA fiduciary rules and enforcement measures. 29 U.S.C. § 1003 (cross-referencing §§ 1051, 1081, and 1101, which exempt welfare-benefit plans from participation and vesting requirements and funding requirements, but not from reporting and disclosure requirements, fiduciary requirements, and enforcement measures).

As welfare-benefit plans are exempt from ERISA's minimum participation, vesting, and funding requirements, however, employers may unilaterally enact amendments to them when the face of the plan reserves this authority. <u>Curtiss-Wright</u>, 514 U.S. at 78. However, an employer seeking to exercise this right must satisfy two conditions. First, it must do so in accordance with written amendment procedures provided on the face of the plan. <u>Krumme v. Westpoint Stevens, Inc.</u>, 143 F.3d 71, 84 (2d Cir. 1998); <u>Miller v. Coastal Corp.</u>, 978 F.2d 622, 624 (10th Cir. 1992). Second, it must provide notice of the amendment to participants and beneficiaries within "210 days after the end of the plan year in which the change is adopted." 29 U.S.C. § 1024(b)(1). In this case, however, UNUM does not argue that the non-solicitation clause constituted an <u>amendment</u> to the original

plan; rather, it argues that the clause was part of the original plan. In the absence of briefing by either party on this issue, we decline to hold that the non-solicitation clause constituted a permissible amendment to the original plan.

Rather, we proceed to inquire whether the severance plan as originally promulgated conditioned payment of benefits on assent to a non-solicitation provision. UNUM contends that the plan's two references to an "Agreement and General Release" that would need to be signed prior to the receipt of benefits suffices to incorporate all Release provisions into the severance plan. Page two of the severance plan states: "If an employee decides not to sign the Agreement and General Release required under this Plan (see Release below), then that employee will not be eligible to receive payment or other benefits under this Plan." (1 Appellant's App. at 71.) Page seven of the plan provides: "No employee will get a payment or other benefit under this Plan unless that employee signs an Agreement and General Release ('Release'). That Release includes important terms that the employee should consider before making the decision to sign it." (1 id. at 76.) Beyond these two oblique references, the plan neither mentions the Release, nor describes its terms.

Cirulis did not become informed of the terms of the Release until June 24, 1999, when he received a copy of it for the first time, two and one-half months after he learned his position would be terminated and one week before he was

formally terminated.  The Release included a clause prohibiting Cirulis from soliciting UNUM employees or brokers to terminate their relationships with UNUM or work for another insurance company.  Until he received a copy of the Release, years after the severance plan had been established, Cirulis had <u>no notice</u> that severance benefits would be conditioned on this provision.  By failing to provide notice to employees that severance benefits would be conditioned on a non-solicitation provision, the plan administrator's conduct in this case contravenes ERISA's mandate that employee-welfare plans be written so as to provide employees with notice of their rights and obligations under the plan.  <u>Curtiss-Wright</u>, 514 U.S. at 83.

Authorities cited by UNUM as providing succor for its position, <u>Lockheed Corp. v. Spink</u>, 517 U.S. 882 (1996); <u>Burrey v. Pac. Gas & Elec. Co.</u>, 159 F.3d 388 (9th Cir. 1998); <u>Jefferson v. Vickers, Inc.</u>, 102 F.3d 960 (8th Cir. 1997); and <u>Friz v. J&H Marsh & McLennan, Inc.</u>, 2 Fed. Appx. 277 (4th Cir. 2001), do not persuade us to adopt a contrary rule.  UNUM argues that these cases stand for the proposition that a plan administrator may condition benefit payments on terms that do not appear on the face of a benefit plan.  Such a rule would defeat the express purpose of ERISA.  "Nothing in ERISA requires employers to establish employee benefit plans.  Nor does ERISA mandate what kind of benefits employers must provide if they choose to have such a plan.  ERISA does,

however, seek to ensure that employees will not be left empty-handed once employers have guaranteed them certain benefits." Lockheed, 517 U.S. at 887 (citations omitted). Each of the four cases is clearly distinguishable from the present case.

In Lockheed Corp. v. Spink, an employee filed suit under ERISA alleging that his former employer, Lockheed, violated its fiduciary duties in conditioning early retirement benefits on his waiver of legal claims. 517 U.S. at 888–90. In an earlier version of the plan, Lockheed provided no retirement benefits to anyone hired when they were over age sixty. Id. at 885. In conformity with newly enacted antidiscrimination laws, however, Lockheed amended its plan in 1988 to provide retirement benefits regardless of the employee's age when hired. Id. As an incentive, however, Lockheed provided enhanced benefits for early retirement, in exchange for the employee's waiver of legal claims against Lockheed. Id. Although Spink was eligible for the early retirement program, he declined to participate because he did not want to waive his legal claims. Id. at 885–86. On review, the Supreme Court rejected Spink's argument that the early retirement plan violated Lockheed's fiduciary duty under ERISA: "We thus hold that the payment of benefits pursuant to an amended plan, regardless of what the plan requires of the employee in return for those benefits, does not constitute a

prohibited transaction [within the meaning of ERISA § 406(a)(1)(D)]." Id. at 895.

Lockheed is not implicated in the instant case because nothing in Lockheed suggests that the challenged provision did not appear on the face of the plan as properly amended, nor is there any suggestion that Spink had no prior notice of it. In addition, the Supreme Court's holding in Lockheed was limited to interpreting the term "prohibited transaction" as used in § 406(a)(1)(D). In contrast, Cirulis does not claim that the plan administrator's inclusion of the non-solicitation condition constituted a "prohibited transaction" in violation of the administrator's fiduciary duties. Rather, he claims that the non-solicitation clause constituted an impermissible condition to payment of benefits because it was not included on the face of the plan.

Lockheed differs from the present case in a further respect. Even if the waiver provision in Lockheed did not appear on the face of the plan, the condition in Lockheed nevertheless left the standard benefits under the plan intact. Were an employee to reject the waiver condition, he would remain entitled to the standard retirement package, although he would not receive enhanced early-retirement benefits. Id. at 885–86. In the instant case, in contrast, assent to the challenged conditions was required in order to receive any benefits.[4]

_____

[4] Lockheed is also distinguishable from the present case in that the challenged provision in Lockheed involved a waiver of legal claims. In this case,
(continued...)

-11-

UNUM also cites <u>Jefferson v. Vickers, Inc.</u> in support of its position. In that case, William Jefferson participated in a pension plan established by his employer, Vickers, which provided for the vesting of pension benefits upon the employee's having worked at Vickers for five years. 102 F.3d at 962. When Jefferson was terminated, he had only been employed by Vickers for four years, eight months, and fifteen days. <u>Id.</u> Vickers offered to extend Jefferson's severance payments, which would permit his pension benefits to vest, in exchange for Jefferson's release of any legal claims against Vickers. <u>Id.</u> Jefferson refused and subsequently filed suit against Vickers, alleging that Vickers intentionally interfered with his pension rights in violation of section 510 of ERISA. <u>Id.</u> In concluding that Jefferson failed to establish Vickers' intent to interfere, the Second Circuit noted: "An employer does not violate ERISA when it conditions the receipt of early retirement benefits upon the participants's waiver of employment claims." <u>Id.</u> at 964 (citing <u>Lockheed</u>, 517 U.S. at 894–95).

In <u>Jefferson</u>, the Second Circuit was not faced with and did not discuss the question presented in this case—whether an employer may condition severance

---

[4](...continued)
Cirulis challenges not only the waiver in the Release, but also the non-solicitation provision. Even if we were to accept the proposition that an employer may condition severance payments on a waiver of legal claims that does not appear on the face of the plan, it does not necessarily follow that non-solicitation clauses should be treated identically.

payments on a non-solicitation provision when the provision did not appear on the face of the plan. Moreover, in Jefferson, the waiver of legal claims was a condition for benefits to which Jefferson would not otherwise be entitled, rather than a condition for benefits that were already promised him. Jefferson may thus be distinguished from the instant case.[5]

Similarly, Burrey v. Pacific Gas & Electric Co. fails to persuade us to adopt UNUM's position. In Burrey, clerical workers employed on a temporary basis with PG&E sued for benefits promised under PG&E's severance plan. 159 F.3d at 390–91. In rejecting this claim, the Ninth Circuit held that the employees lacked standing because they could not show they were beneficiaries to the severance plan in light of their refusal to sign the required Severance and Agreement Release. Id. at 395–96. As in the present case, PG&E's severance plan indicated that benefits would be conditioned on employees' signing a release. Importantly, however, there was nothing to suggest that the Burrey employees lacked notice of the terms of the release form. Burrey does not discuss whether an employer may condition benefits on employees' assent to Release terms when the employees had no prior notice of these terms.

---

[5] In addition, as in Lockheed, the challenged condition was a waiver of legal claims, not a non-solicitation clause.

-13-

Finally, UNUM cites an unpublished opinion, Friz v. J&H Marsh & McLennan, Inc., in which the Fourth Circuit upheld the conditioning of severance benefits on employees' assent to a non-solicitation clause. Given that Friz is unpublished, and that the facts did not present an opportunity for the Fourth Circuit to indicate how it might rule on the issue squarely before us, we do not consider it further.

Because we conclude that the plan administrator acted arbitrarily and capriciously in conditioning payment of severance benefits on assent to a non-solicitation provision of which employees had no notice,[6] we do not address

_____

[6] Although neither party raised the issue in their briefs, we acknowledge the possibility that the plan administrator's actions may be subject to the sliding-scale of deference we articulated in Kimber, 196 F.3d at 1097. In Kimber, we held that when the plan administrator operates under a conflict of interest, although "[t]he standard always remains arbitrary and capricious, . . . the amount of deference present may decrease on a sliding scale in proportion to the extent of conflict present." Id. at 1097 (quotation omitted). Evidence of a conflict of interest requires "proof that the plan administrator's dual role jeopardized his impartiality." Id. (quotation omitted). "[T]he mere fact that the plan administrator was a [company] employee is not enough per se to demonstrate a conflict. Rather, a court should consider various factors including whether: (1) the plan is self-funded; (2) the company funding the plan appointed and compensated the plan administrator; (3) the plan administrator's performance reviews or level of compensation were linked to the denial of benefits; and (4) the provision of benefits had a significant economic impact on the company administering the plan." Id. (quotation and citation omitted).

More recently, in Pitman v. Blue Cross & Blue Shield of Okla., 217 F.3d 1291, 1296 (10th Cir. 2000), we suggested that when the plan administrator and a third-party insurer are the same entity, this alone may suffice to show a conflict of

(continued...)

-14-

Cirulis's argument that the plan administrator acted arbitrarily and capriciously in refusing to negotiate the terms of the Release with Cirulis when he was willing to do so for three other employees.

## III

We **REVERSE** the grant of summary judgment and **REMAND** for further proceedings consistent with this opinion. On remand, the district court must determine whether Cirulis was entitled to officer-level rather than employee-level benefits.[7]

---

[6](...continued)
interest. Pitman's holding was expressly limited to exclude situations in which a plan is self-funded, i.e., where an employee of the company administers the plan. Id. at 1296 n.4. Unlike an insurer, an employer (or its agent-employee) does not usually derive its profit solely from the administration of the benefits plan. Id.

In this case, the plan administrator is an employee of UNUM, rather than a third-party insurer. This suggests that Pitman may not apply. However, as UNUM, unlike most other employers, presumably derives profits from administering employee benefit plans for other companies, it is arguable that the identity of the plan administrator as a UNUM employee may, standing alone, provide sufficient evidence of a conflict warranting a reduced level of deference. Nevertheless, we need not decide this issue, as we conclude that even under the most deferential version of the standard, the plan administrator's actions in this case were arbitrary and capricious.

[7] UNUM suggests that Cirulis has waived his claim to officer-level rather than employee-level benefits due to his failure to present this issue on appeal. However, Cirulis could not have raised this argument on appeal because the district court did not address the merits of this claim, reasoning that Cirulis' refusal to sign the Release disqualified him from either plan.