**Joan OWEN, individually and as personal representative of the Estate of Raymond Owen, and the class of similarly situated individuals and entities, Plaintiffs,**

v.

**REGENCE BLUECROSS BLUESHIELD OF UTAH, and The Regence Group Defendants.**

No. 2:03–CV–01137PGC.

United States District Court,
D. Utah,
Central Division.

April 19, 2005.

ORDER DENYING PLAINTIFF'S MO-
TION FOR CLASS CERTIFICA-
TION AND GRANTING DEFEN-
DANTS' MOTION FOR SUMMARY
JUDGMENT

CASSELL, District Judge.

In this ERISA case, currently pending before the court is a motion for class certification and a motion by the defendant for summary judgment. The motion for class certification was previously briefed and discussed at oral arguments. The court took the motion under advisement and invited further briefing on the issue of whether a plaintiff alleging a breach of fiduciary duty based upon a material omission in an ERISA-governed insurance policy must prove that there was some reliance on the omission in order to prevail on the claim. At the oral argument, both sides agreed that the issue of reliance would determine the outcome of the motion for class certification and possibly the entire case. This court now holds: (1) that in order to prevail on a claim for breach of fiduciary duty based upon a material omission a plaintiff must show that her alleged harm was caused by the omission; (2) that this individualized determination makes class certification inappropriate; and (3) that there is no genuine issue of material fact that Ms. Owen's alleged damages were not caused by the alleged material omission. The court therefore DENIES the motion for class certification and GRANTS the defendants' motion for summary judgment.

## BACKGROUND

The facts of this case are set forth at length in the court's most recent ruling.[1] For purposes of this motion, the court finds that the following facts are relevant and undisputed:

Joan Owen and her husband were insured under the Regence's "ValueCare" plan, issued to her husband through his employer. Under the ValueCare plan, the insured's "eligible medical expenses" were covered by Regence. When a ValueCare member went to a "Contract" provider, the "eligible medical expenses" were accepted as payment in full for the medical services. When a ValueCare customer received medical services from a "Non–Contract" provider, the customer was responsible for

1. Order Granting in Part Defendants' Motion for Summary Judgment and Taking Under Advisement Plaintiff's Motion for Class Certi- fication, Case No. 2:03–CV–01137PGC (filed Feb. 9, 2005).

the difference between the amount billed by the provider, and the eligible medical expenses covered by the ValueCare plan. With respect to Non–Participating providers, "eligible medical expenses" were defined as "reasonable charges for Covered Services as determined by ValueCare."

In March, 2001, Ray Owen was diagnosed with liver cancer. On September 10, 2001, Mr. Owen underwent a liver transplant at LDS Hospital. LDS Hospital is a Non–Participating Provider under the ValueCare Plan, but was also the only hospital in the Intermountain West which performed liver transplants. According to Ms. Owen, however, LDS hospital informed the Owens that they had reached an agreement with Regence so that LDS Hospital would be treated as a Participating Provider for purposes of the operation. Had this agreement not been reached, the Owens would likely have gone to a hospital in Omaha, Nebraska, which was a Participating Provider.

According to Ms. Owen, the agreement reached between Regence and LDS Hospital was that Regence would cover all but $30,000 of the procedure, which the Owens would be responsible for. In her deposition, Ms. Owen alleges that Regence failed to honor this agreement. The Owens were instead billed for $60,421.83. This amount reflected the difference between the amount billed by LDS Hospital ($295,884.20) and the "eligible medical expenses" as defined in the ValueCare plan for Non–Participating Providers as determined by Regence ($235,422.37). In other words, the Owens were billed as though they had gone to a Non–Participating Provider.

According to Regence, the reason LDS Hospital was treated as a Non–Participating provider was because there was no "Case Agreement" in place. Regence and LDS Hospital had worked together in the past on many "Case Agreements." These agreements were worked out on a case-by-

case basis and provided for more favorable payment terms for high-cost procedures received by Regence customers at LDS Hospital. This apparently did not occur in the case of Mr. Owen.

Mr. Owen received the liver transplant, but subsequently passed away. Ms. Owen prolonged her insurance coverage under the ValueCare plan for two months after Mr. Owen's death by making COBRA payments. But on June 1, 2002, Ms. Owen allowed her coverage to expire. Ms. Owen does not currently have insurance, but would like to obtain insurance again.

Subsequent to Mr. Owen's liver transplant, Regence and IHC Health Services (which owns LDS Hospital) entered into a "Participating Hospital Agreement." As a result of Ms. Owen's claims for unpaid medical expenses, Regence became aware that there had been no Case Agreement with LDS Hospital for Mr. Owen's liver transplant. On November 15, 2004, almost a year after Ms. Owen's complaint was filed in this case, Regence and IHC agreed to amend the Participating Hospital Agreement to address Mr. Owen's liver transplant. As a result, LDS Hospital has agreed to accept the "eligible medical services" amount paid by Regence for the liver transplant as payment in full. LDS Hospital has also agreed that Ms. Owen will not receive any further bills from LDS Hospital. According to Ms. Owen, however, the agreement reached between Regence and LDS Hospital now means that Ms. Owen has overpaid $29,569.50, for which she should be reimbursed.

Ms. Owen's claim, however, is not based upon any representation made to her by either Regence or LDS Hospital, or upon the Case Agreement reached between Regence and LDS Hospital. Rather, Ms. Owen claims that the ValueCare plan's failure to specify "eligible medical expenses" with respect to services obtained from Non–Contract providers is a material

omission, and that the clause should therefore be stricken and Regence should be responsible to cover the full amount of the charges billed by Non–Contract providers. Ms. Owen's claim is not based upon any theory of reliance upon the omission. Rather, it is essentially a strict liability claim—regardless of whether or not the omission caused the harm, the clause is unenforceable and should be rescinded from the plan, leaving Regence responsible for the full billed amount.

## DISCUSSION

Two motions are currently pending; a motion for summary judgment filed by the defendants, and a motion for class certification filed by plaintiff. Both motions hinge on the issue of whether or not a plaintiff must prove reliance upon a material omission before she can prevail on a claim for breach of fiduciary duty based upon a material omission in an ERISA plan of insurance.

■ Under ERISA, a plan participant may sue for breach of fiduciary duty based upon a material omission.[2] It is clear that detrimental reliance is a necessary element of a cause of action based upon a material *misrepresentation*. The generally-accepted elements are stated by the Third Circuit as follows:

To allege and prove a breach of fiduciary duty for misrepresentations, a plaintiff must establish each of the following elements: (1) the defendant's status as an ERISA fiduciary acting as a fiduciary; (2) a misrepresentation on the part of the defendant; (3) the materiality of that misrepresentation; and (4) detrimental *reliance* by the plaintiff on the misrepresentation.[3]

While the Third Circuit treats the materiality of the misrepresentation and the reliance issue separately, it seems to this court that materiality and reliance (sometimes called causation) are two sides of the same coin. And when considering (as in this case) a claim of material omission, the same standard should apply. As another district court has stated, claims based "primarily on *omissions* rather than *misrepresentations* .... also should require some showing of causation or detrimental reliance, necessitating individualized proof."[4]

■ The Tenth Circuit has stated that a misrepresentation is material " 'if there is a substantial likelihood that it would *mislead* a reasonable employee in making an adequately informed ... decision.' "[5] In other words, if the person is not misled—i.e., if the person's actions are not somehow different than they otherwise would have been—the alleged misrepresentation is not material. Put another way, the alleged misrepresentation is immaterial unless the plaintiff is able to prove the element of causation. As stated by the Sixth Circuit, "Although the[ ] cases deal primarily with misrepresentations concerning the terms of an ERISA plan, their supporting rationale applies with equal force to [omissions]-a fiduciary may not materially mislead those to whom the duties of loyalty and prudence described in 29 U.S.C. § 1104 are owed."[6] This court

2. *Horn v. Cendant Operations, Inc.,* 2003 WL 21513210 (10th Cir.2003).

3. *Burstein v. Retirement Account Plan for Employees of Allegheny Health Education and Research Foundation,* 334 F.3d 365, 384 (3d Cir.2003) (emphasis added).

4. *Tootle v. ARINC, Inc.,* 222 F.R.D. 88, 97 (D.Md.2004).

5. *Horn,* 2003 WL 21513210 at \* 6 (quoting *Jordan v. Fed. Express Corp.,* 116 F.3d 1005, 1015 (3d Cir.1997)) (emphasis added).

6. *Berlin v. Michigan Bell Telephone Co.,* 858 F.2d 1154, 1163 (6th Cir.1988).

holds, therefore, that in order to prevail in a claim for breach of fiduciary duty based upon an omission, a plaintiff must prove that they were materially misled. "[T]he plaintiff must allege that the breach of fiduciary duty *caused some harm* to him or her that can be remedied." [7]

A useful analogy comes from section 1109(a) of ERISA, which provides a civil cause of action against an ERISA plan fiduciary to recover funds on behalf of the plan. Section 1109(a) is not specifically applicable to this case because "[u]nder section 1109, a fiduciary who breaches his fiduciary duty is liable to the plan-not to the beneficiaries individually." [8] It is notable, however, that the liability of the fiduciary under § 1109(a) is specifically limited to damages "resulting from" the breach of fiduciary duty. The Tenth Circuit has stated: "The liability provision of ERISA, 29 U.S.C. § 1109(a), makes a fiduciary liable for 'losses ... *resulting from* each such breach' of its fiduciary duty. The phrase 'resulting from' indicates that there must be a showing of 'some causal link between the alleged breach [of fiduciary duty] ... and the loss plaintiff seeks to recover.'" [9]

The case law also supports the conclusion that a plaintiff seeking damages based on a breach of fiduciary duty for an alleged material omission must prove that the breach caused her damages. [10] In *Willett v. Blue Cross and Blue Shield of Alabama*, [11] for example, the Sixth Circuit held that a plaintiff alleging a breach of fiducia-ry duty based upon a material omission "must establish that their claimed losses were proximately caused" by the failure to provide the information to the plaintiff. [12] The case involved the fiduciary's failure to notify plan beneficiaries that their coverage had been suspended. The court found that they could show that this failure caused their damages by proving, for example, that they would have delayed some medical treatment, or would have sought alternative insurance during the time they were not covered. [13]

The plaintiff relies on a different line of cases in arguing that reliance is not a necessary element for the plaintiff's cause of action. These cases rely on contract principles to hold that an undisclosed limitation in an ERISA plan cannot be enforced to limit coverage. The primary case cited by the plaintiff is the Tenth Circuit's decision in *Cirulis v. UNUM Corp.* [14] In that case, an employee entitled to severance benefits under an ERISA plan was terminated from his employment. Under the plan, the plan administrator retained discretion to determine benefit rights, eligibility, and amounts of payments. At the time of his termination, Cirulis received for the first time a "General Agreement and Release" which conditioned receipt of the severance payments on assent to a non-solicitation provision which was not included on the face of the plan. Cirulis immediately objected and requested negotiations regard-

---

7. *Kamler v. H/N Telecommunication Services, Inc.,* 305 F.3d 672, 681 (7th Cir.2002).

8. *Walter v. Int'l Ass'n of Machinists,* 949 F.2d 310, 317 (10th Cir.1991).

9. *Allison v. Bank One Denver,* 289 F.3d 1223, 1239 (10th Cir.2002) (citations omitted) (emphasis in original).

10. *Kamler,* 305 F.3d at 682 (rejecting breach of fiduciary claim where plaintiff failed to allege he would have done anything differently had he received the information he claimed he was entitled to).

11. 953 F.2d 1335 (11th Cir.1992).

12. *Id.* at 1343.

13. *Id.*

14. 321 F.3d 1010 (10th Cir.2003).

ing the non-solicitation clause. UNUM then informed Cirulis that he would no longer be eligible for benefits if he refused to sign the release agreement. Cirulis filed suit in federal court alleging that the plan administrator's decision was arbitrary and capricious. The Tenth Circuit noted that "courts have held that the imposition of new conditions that do not appear on the face of a plan constitutes arbitrary and capricious conduct." [15]

Cases such as *Cirulis* are inapplicable to this case for several reasons. First, these cases deal with the different legal issue of whether a plan administrator has acted arbitrarily or capriciously in denying benefits. In this case, there was no *denial* of benefits. The plaintiff's argument is not that the plan administrator abused his discretion in deciding how much coverage to provide when a plan participant received medical services from a Non–Contract provider. Rather, the issue presented here is whether the plan must specifically disclose that amount. Second, *Cirulis* and the related cases cited by plaintiff deal with a situation where a new condition is sprung on a beneficiary without notice, which results in the denial of benefits fully expected by the plan participant. In this case, by contrast, ValueCare members were fully aware that they would pay more for going to a Non–Contract provider. The plan specifically stated:

> It is generally to the Member's financial advantage to use ValueCare Providers. When a ValueCare Provider is used, the Member is responsible to pay only the Deductible, Copayment and Coinsurance for Covered Services....

When Non–Value Care Providers are used, the Member is responsible not only for Deductible, Copayment and Coinsurance for Covered Services, but also for the difference between the Non–ValueCare Provider's billed charged and Eligible Medical Expenses.

Thus, in contrast to Cirulis, who "had *no notice* that severance benefits would be conditioned on [an undisclosed] provision," [16] and who was denied benefits he was otherwise entitled to were it nor for the undisclosed limitation, here plan beneficiaries were specifically made aware that they would have to pay more for going to Non–Contract providers and were not otherwise denied some benefit which was expected based upon the language of the plan.

Indeed, *Cirulis* and other similar cases "rest on two interrelated principles relevant to contract law and to ERISA claims in particular. [First], [t]he notion of protecting vested rights prevents one party to a contract from unilaterally changing the terms of performance after that performance has become due." [17] There is no allegation in this case that Regence somehow altered the plan after performance became due thereby interfering with any vested rights. Indeed, the rights of the plaintiff were clearly set forth in the plan. "The second and related principle ... is that of notice.... [A] beneficiary can 'not be bound to terms of the policy of which he had *no notice.*'" [18] The cases cited by plaintiff all involve a situation where a plan the beneficiary had agreed to was retroactively modified to limit the beneficiary's

---

**15.** *Id.* at 1013.

**16.** *Id.* at 1014 (emphasis in original). *See also Garratt v. Walker,* 164 F.3d 1249, 1255–56 (10th Cir.1998) (*en banc*) (holding that it was arbitrary and capricious for plan administrator to orally modify plan to require a salary reduction);

**17.** *Member Services Life Ins. Co. v. American Nat'l Bank & Trust Co.,* 130 F.3d 950, 956 (10th Cir.1997).

**18.** *Id.* (citation omitted) (emphasis added).

coverage without notice to the plan participant. That is not the case here. As explained above, members of the ValueCare plan were fully on notice that it would cost them more to receive medical services from a Non–Contract provider. Therefore, the court finds that the cases relied upon by plaintiff are largely irrelevant to the matter at hand.

■ At oral arguments on the issue of class certification, the plaintiff agreed that if reliance is an element of proof required for her claim, certification would not be appropriate. The case law is clear on this point. In *Hudson v. Delta Air Lines, Inc.,*[19] the Eleventh Circuit denied certification of a class action under ERISA claiming breach of fiduciary duty because the causation issue "would necessarily have been highly individualized for each potential [class member]."[20] Moreover, after its own individual review of the facts and legal claims at issue in this case, this court agrees that the need for individualized proof means that the plaintiff has not established the requisite typicality and commonality required by Rule 23. The plaintiff has not, therefore, met her burden of establishing that the requirements of Rule 23 have been met and certification must be denied.

■ Summary judgment in favor of the defendants is appropriate for the same reasons. Having agreed with the defendants that reliance (read: causation) is an element of a claim for damages based upon a breach of fiduciary duty for a material omission, at the summary judgment stage the defendants can obtain summary judgment if they "establish the absence of causation by proving that the beneficiaries' claimed losses could not have resulted" from the alleged breach.[21] The defendants have met that burden. Plaintiff has specifically rejected any cause of action based upon a theory of reliance.[22] Ms. Owen testified that she understood that by going to a Non–Contract Provider she would be responsible for the difference between the billed costs and the allowed amount.[23] She did not testify that her actions would have been any different had she known how much she would have to pay. Indeed, the plaintiff's advanced theory specifically rejects any element of causation or reliance in favor of a near strict-liability claim based on *Cirulis* and related cases. But as the court has discussed at length above, this case simply does not involve any attempt to deny a plan beneficiary of vested rights based upon an undisclosed plan limitation. *Cirulis* and the related cases cited by plaintiff are inapplicable. Because the plaintiff has not shown that the alleged omission was the cause of any damages, summary judgment is appropriate in favor of defendants.

In closing, it should be noted that the court has *not* ruled on whether the plan at issue complies with the requirements of ERISA and Utah law concerning disclosure of expected benefits. The court has ruled only (1) that claims for breach of fiduciary duty based upon a material omission require the plaintiff to prove that the alleged omission caused her damages; (2)

---

19. 90 F.3d 451 (11th Cir.1996).

20. *Id.* at 457. *See also Sprague v. General Motors Corp.,* 133 F.3d 388, 399 (6th Cir. 1998) (upholding denial of class certification where ERISA claim was based upon affirmative misrepresentation because "[a] named plaintiff who proved his own claim would not necessarily have proved anybody else's claim").

21. *Willett,* 953 F.2d at 1343.

22. Reply Memo. in Support of Plaintiff's Motion for Class Certification at 11 ("Owen's theory of liability does not require any proof of reliance on her part or any other proposed class member's part.").

23. Owen Depo. at 31.

that class certification is inappropriate where an individualized determination of causation is required; and (3) that summary judgment is appropriate where the plaintiff has failed to show that the alleged material omission resulted in any harm to her.

### CONCLUSION

Oral arguments having once already been heard on these issues, the court finds that further oral arguments would not be of assistance in resolving this case. The hearing scheduled for May 3, 2005, is therefore stricken. The court DENIES plaintiff's motion for class certification (# 38–1) and GRANTS defendants' motion for summary judgment (# 68–1). There being no other issues to resolve, the court directs the clerk's office to close the case.